## DANJEAN & BROTHER *v.* R. S. BLACKETER.

The decision in the case of *Curtis* v. *Blacketer*, just decided, re-affirmed.

When an answer to an intervention, in which title to property attached is set up, alleges simulation and fraud in such title, and asks that the sale to the intervenor be annulled on these grounds, and no exception is taken to the irregularity of such proceedings, the court will inquire into and examine the questions raised in such answer, and will not reverse a judgment setting aside the sale, on the ground that it should have been attacked directly in a revocatory action, and not collaterally in the attachment suit.

When a party purchases property from an absconding debtor, it is presumed that he must have known, that his vendor's object in selling his property was to deprive his creditors of their recourse upon it.

A sale made under such circumstances is fraudulent, and subsequent payments made by the purchaser cannot cure the defects of his title.

APPEAL from the District Court of the Parish of St. Mary, *Voorhies*, J.
*A. L. Tucker*, for plaintiff. *H. C. Wilson*, for intervenor and appellant.

COLE, J. The motion to dismiss this appeal is overruled for the reasons given in the case of *Curtis* v. *Blacketer*, just decided.

On the 8th of October, 1856, *Burel S. Blacketer*, the defendant, purchased of one *James M. Trousdale*, a certain lot situated in the town of Franklin, parish

DANJEAN
v
BLACKETER.

of St. Mary, with all the buildings and improvements thereon; also, a large number of horses, buggies, wagon, corn, hay, fodder, blacksmith shop, wheelwright and carriage trimming shop, together with a livery stable situated on the lot, for the price of $6,546 66⅔, of which amount $2000 was paid cash, and the balance was payable as follows : $1500 on the 1st of March, 1857, ; $1523 33⅓ on the 1st of March, 1858, and $1523⅓ on the 1st of March, 1859 : for which last three mentioned amounts *Blacketer* delivered to his vendor his three promissory notes bearing interest at the rate of eight per cent. per annum from date until paid.

The property conveyed was specially hypothecated to *Trousdale*, the vendor, to secure the payment of the notes, which were identified with the act of sale.

On the 2d of February, 1857, *Blacketer* sold the property to *William A. Wilson*, the intervenor in the present suit, and executed an act of conveyance for the same at the city of Natchez, Mississippi.

*Blacketer* having absconded, leaving many debts, several of his creditors sued him by attachment, and among others *Danjean & Brother* instituted the present suit against *Blacketer*, and attached the property.

*Wilson* intervened, averring that the property is not, and was not at the time it was attached, that of *Blacketer*, but was and still is his.

Plaintiffs, in their answer to the intervention, alleged, that the pretended sale by *Blacketer* to *Wilson* was an act of simulation and fraud, and was made to cover up the property of *Blacketer*, and to defraud his creditors of their legal rights against him. They deny there was any consideration for the sale, and aver that neither money nor anything else was paid by *Wilson* to *Blacketer* for the same. They demand of *Wilson* strict proof of the *bona fides* of the sale and of the consideration therefor. They pray to have the intervention dismissed and the pretended sale annulled.

The judgment of the lower court decreed the sale to be simulated and fraudulent, dismissed the intervention, and ordered that the property attached be seized and sold to satisfy the plaintiffs' judgment.

*Wilson* appealed.

It is established by the testimony of *Kennedy*, that *Wilson*, by his agent, the witness, *Kennedy*, on the eighth of February, 1857, took possession of the property conveyed to him, as aforesaid, on which day he received from *Wilson* the deed of sale, with instructions to have it recorded, which he caused to be done in the parish of St. Mary, on February 9th, 1857. That he ceased to be the agent of *Blacketer*, and commenced to be that of *Wilson*, from the time he received the letter from *Wilson*, enclosing the deed from *Blacketer*; that *Wilson* assumed the payment of the notes due *Trousdale*, the vendor of *Blacketer*, and paid then $800 in cash ; and afterwards witness, as agent of *Wilson*, paid *Trousdale* $2250 ; that these payments were made after the attachment had been levied.

Even conceding that an actual title had passed from *Blacketer* to *Wilson*, accompanied with possession, and that the plaintiffs could not test the validity of the title by attachment or seizure, so far as relates to the immovables sold ; but that a direct action must be brought to avoid the contract as fraudulent, yet, as the answer to the intervention, which set up title to the property, alleged simulation and fraud, and asked the sale to be annulled ; as no exception was made to the regularity of the proceedings, and the parties to the suit have examined the questions of fraud and simulation ; we consider it our duty to inquire if the sale were fraudulent, and not to reverse the decision on the ground that the party

ought to have instituted the revocatory action, and not to have proceeded to test the title by attachment.

The circumstances of this case show the sale to have been fraudulent.

*Blacketer* having committed a criminal offence, absconded from the parish of St. Mary, leaving no other property to meet his liabilities, but that conveyed to *Wilson*. *Kennedy*, the witness of the intervenor, testifies that *Blacketer* had forged the names of some persons to a note of $2300 : " he left here, did not bid any person good bye, thinks he left in the night, knows that *Blacketer*, the last time he left here, was pretty largely indebted, and there are several suits against him."

*Kennedy* testifies, that *Blacketer* left about the 19th or 20th March, 1857 ; it must, however, have been believed by some, he had departed permanently previous to this time; for the petition of attachment in this case was filed on the 17th February, 1857, accompanied with the affidavit of the truth of the allegations in the petition ; and one of these was that *Blacketer* had departed permanently from the State.

*Kennedy* also says : that *Wilson* came to Franklin for the first time in February, 1857, that *Wilson* returned there with *Blacketer* on the 17th or 18th of March. As the deed of sale was executed at Natchez on the 2d of February, 1857, the sale must have been made by *Blacketer* to *Wilson* before the latter had ever been at Franklin, where the property was situated.

So that he bought a lot, stable, horses, and a variety of other property, without ever having seen them. Besides, he buys all the books ; also, the accounts, assets and credits belonging to the stable, which had accrued after the 7th October, 1856.

Such conduct is not in the usual course of business.

As *Wilson* came to Franklin in February, and the attachment was levied on the 17th of the same month, and a copy of the notice of attachment was left in the hands of *Kennedy*, who resided at the house of *Blacketer*, it does not seem reasonable to believe that *Wilson* was ignorant of the embarrassed condition of *Blacketer ;* and therefore, even if he did buy the property to secure his own debts, it was in fraud of the other creditors.

There is no proof that *Wilson* paid any consideration at the time of the sale. . *Kennedy* says, that *Blacketer* was largely indebted to *Wilson* ; but his knowledge is derived from the two parties to the sale. Their admissions cannot have much weight under the circumstances of this case. *Kennedy* also says, that all he knows about the consideration of the sale, is what both parties told him.

There is not, then, a particle of proof, that *Blacketer* was indebted to *Wilson*, or that any consideration was paid for the property, except that, after the attachment had been levied, *Wilson*, and *Kennedy*, pretending to be the agent of *Wilson*, made two payments on the mortgage notes due *Trousdale*.

It should also be noticed, that *Kennedy* had been in the employ of *Blacketer*, and was so at the time of the pretended sale.

He held the property, in the absence of *Blacketer*, as his agent; and after the letter of *Wilson*, he suddenly becomes the agent of the latter, and would not let *Blacketer* ride a horse out of the stable.

*Blacketer* was an absconding debtor. *Wilson* must have known that his object in selling the property was to deprive his creditors of recourse upon it.

The act of sale being fraudulent, the subsequent payments by *Wilson* cannot cure the defects of his title.

DANJEAN
v.
BLACKETER.
They were made after the execution of the attachment, and appear to have been made solely to bolster up his pretended title. *Zacharie* v. *Buckman*, 8 L. 308; 1 M. 240; 11 R. 190; 18 L. 388; C. C. 1963, 1964, 1973.

The sale is clearly null.

Judgment affirmed, with costs of appeal.